**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO: 21-cv-80603-RKA/Reinhart

**STEVEN FORDE**, *et al.*,

    *Plaintiffs*,

v.

**ARTHUR KRANTZ**, *et al.*,

    *Defendants.*

_____/

**ORDER GRANTING SUMMARY JUDGMENT**

This case involves a luxury yacht sale gone wrong, and it initially came to us when the buyer, Steven Forde, sued the seller, Arthur Krantz, for a declaratory judgment.[1] *See generally* Complaint [ECF No. 1]. Before us now is Krantz's Motion for Summary Judgment ("MSJ") [ECF No. 95] on his Amended Counterclaim [ECF No. 59], in which he asserts—under "the Admiralty jurisdiction of the Court"—"*in personam* claim[s] for breach of preferred ship's mortgage and marine promissory note" against Forde (Count I) and MWE Yachts, LLC (Count II). *See* Amended Counterclaim at 2, 4, 6.

To make a long story short, Forde's final mortgage payment to Krantz—a $220,000 lump sum—ended up in the bank account of a third-party fraudster who was pretending to be one of Krantz's lawyers. After their attempts at rectifying the situation failed, Forde and Krantz blamed each other—which is to say that Forde behaved as though the yacht belonged to him, while Krantz embarked on an aggressive repossession campaign. Because the facts—even when viewed in the light most favorable to Forde—reveal that Forde wired his final lump-sum payment *not* to Krantz (or to

---

[1] Forde is both our Plaintiff and our Counter-Defendant, and Krantz is both our Defendant and our Counter-Plaintiff. Forde is involved both as an individual and as MWE Yachts, LLC. Similarly, Krantz appears as an individual and as Krantz Motor Yachts, LLC. For simplicity's sake, we'll refer to the parties as "Forde" and "Krantz," except when the respective LLCs need to be singled out.

Krantz's lawyers) but to a third-party fraudster, we agree with Krantz that Forde materially breached *both* the preferred ship's mortgage (the "Mortgage") and the promissory note (the "Promissory Note"). We also agree that Forde cannot use the third party's fraud as a defense to Krantz's counterclaims because Forde was in the best position to prevent it. After careful review, then, we **GRANT** Krantz's MSJ as to both Counts I and II.[2]

## THE FACTS[3]

### A. Forde and Krantz execute a Preferred Ship's Mortgage and a Marine Promissory Note for the sale of the yacht.

On January 3, 2019, the parties executed (1) the Mortgage and (2) the Promissory Note, in accordance with the provisions of 46 U.S.C. §§ 31322, 31325. Forde and MWE Yachts were the mortgagors, and Krantz and Krantz Motor Yachts were the mortgagees. *See* Mortgage [ECF No. 59-3] at 2. Under the terms of the Mortgage and the Promissory Note, Krantz conveyed the yacht (called "Arthur's Way") to Forde in exchange for $900,000. *See* Promissory Note [ECF No. 59-3] at 9; Krantz's Statement of Material Facts in Support of his MSJ ("SMF") [ECF No. 94] ¶ 1 ("On January 3, 2019, [Forde] executed a Preferred Ship's Mortgage contract and Marine Promissory Note as

---

[2] Krantz voluntarily dismissed Count III of his Counterclaim. *See* Notice of Dismissal of Count III of Defendant's Amended Counterclaim [ECF No. 72].

[3] "The facts are described in the light most favorable to [the non-movant]." *Plott v. NCL Am., LLC*, 786 F. App'x 199, 201 n.2 (11th Cir. 2019). We accept these facts for summary-judgment purposes *only* and recognize that "[t]hey may not be the actual facts that could be established through live testimony at trial." *Snac Lite, LLC v. Nuts 'N More, LLC*, 2016 WL 6778268, at *1 n.1 (N.D. Ala. Nov. 16, 2016); *see also Hampton v. Mentor Corp.*, 725 F. App'x 825, 826 n.1 (11th Cir. 2018) ("[W]hat we state as facts in this opinion for purposes of reviewing the rulings on the summary judgment motions are the facts for present purposes, but they may not be the actual facts." (quoting *Kelly v. Curtis*, 21 F.3d 1544, 1546 (11th Cir. 1994))). In considering Krantz's MSJ, then, we describe the facts in the light most favorable to Forde. Even though Forde hasn't responded to Krantz's MSJ, we do have some sense of his side of the story because Krantz has attached as an exhibit to his MSJ Forde's November 8, 2021, Deposition [ECF No. 94-1]. *See* S.D. FLA. L.R. 56.1(c) ("All material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts, provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence, and (ii) any exception under Fed. R. Civ. P. 56 does not apply.").

mortgagor in favor of [Krantz], mortgagee[ ], for the amount of $900,000[ ] in accordance with 46 U.S.C. § 31322 and § 31325 for the purchase of the Vessel, Arthur's Way[.]"); November 8, 2021, Deposition of Forde ("Forde Dep.") [ECF No. 94-1] at 16:16–18 (Q: "Are you familiar with this document?" Forde: "Yeah, it's like the mortgage we did on the boat."). The Mortgage imposed on Forde the following duties (among others):

- "SECURED OBLIGATION: This Agreement secures: (a) all of Borrower's obligations under this agreement; (b) all of Borrower's obligations under that certain Promissory Note in the amount of $900,000.00 and any mortgage or debt instrument or charter party agreement which Borrower executed and which is intended to be secured by this Agreement . . . ; (c) payment of all costs, charges, expenses, and fees related to the Agreement and/or the Instrument . . . ; and (d) the performance of all representations, warranties, and promises as stated in this Agreement or the Instrument." Mortgage ¶ 1.

- "FEDERAL DOCUMENTATION/STATE REGISTRATION: Borrower agrees that this vessel will be documented as with the United States with its current hailing port in Florida, in Borrower's name and that this Security Agreement and First Preferred Ship's Mortgage on the vessel will be recorded in Lender's favor." *Id.* ¶ 3.

- "RISK OF LOSS, INSURANCE: . . . (b) Until this Agreement and the Instrument are fully paid and performed, Borrower agrees to maintain in full force and effect [several enumerated] insurance coverages." *Id.* ¶ 6.

In the case of a default, the Mortgage allowed Krantz, among other things, to:

(1) require that Borrower immediately pay the full unpaid balance of Borrower Debt; . . . (3) demand that borrower assemble and deliver the Vessel to Lenders at such location as Lenders may reasonably require . . . ; (4) lawfully enter any premises where the Vessel may be located and repossess the Vessel . . . with or without legal process or judicial decree and with or without previous notice or demand for performance; . . . (6) bring suit at law, in equity, or in admiralty to foreclose Lenders' security interest and/or to recover judgment for any and all amounts due . . . ; (8) refer this Agreement to an attorney for collection or enforcement[.]

*Id.* ¶ 16.

One of the parties—it's unclear which—recorded the Mortgage with the U.S. Coast Guard on February 21, 2020. *See* Abstract of Title [ECF No. 94-2] at 4.

3

### B. Forde doesn't document the yacht with the Coast Guard. Krantz told him not to—at least at first.

Although the Mortgage required Forde to document the yacht with the Coast Guard, *see* Mortgage ¶ 3, he admits that he didn't do so, *see* Forde Dep. at 64:4–8 (Q: "[D]id you ever consult with anybody about forming [MWE Yachts] in the United States or in the State of Florida so that you could document the vessel?" Forde: "No, ma'am."). As justification for this omission, Forde said that Krantz told him not to document the yacht. *Id.* at 25:8–10 (Q: "[I]t's your position that Arthur [Krantz] told you not to document the vessel?" Forde: "Yes."); *id.* at 21:8–21 (Q: "So in this agreement that was signed by both you and Arthur [Krantz], do you agree that you agreed to document the vessel with the United States?" Forde: "Yes, when Arthur [Krantz] gave me the go-ahead, yes." Q: "So you're saying that his signature wasn't the go ahead[?]" Forde: "No, because he asked me not to document it."); *id.* at 64:13–16 (Forde: "Arthur Krantz asked me not to document the boat because it would . . . register the transfer of ownership and he didn't want the brokers knowing that he had sold the boat.").

On March 13, 2020, however—over a year after the Agreement was signed—one of Krantz's lawyers (Matthew Valcourt) contacted Forde and requested the information he needed for the yacht's documentation. *See* March 13, 2020, Email from Valcourt to Forde [ECF No. 48-6] at 1; Forde Dep. at 30:7–10 (Q: "Here Matt [Valcourt], who you say is Arthur [Krantz's] attorney, is asking you for information to document the vessel, correct?" Forde: "Yes, 15 months after."). Forde didn't provide Valcourt with the requested information. *Id.* at 30:11–12 (Q: "Did you provide that information?" Forde: "No.").

### C. Forde pays the $220,000 final lump sum—but not to Krantz or Krantz's lawyers.

Under the terms of the Promissory Note, Forde was obligated to satisfy the $900,000 mortgage by making monthly payments of $35,000 to Krantz. *See* Promissory Note at 9. Initially, Forde made these payments—though not always on time. *See* March 13, 2020, Email from Valcourt to Forde [ECF No. 48-6] at 2 ("[T]he loan is now two months in arrears."); Forde Dep. at 31:18–32:1 (reading—and

4

not denying the contents of—the March 13, 2020, Email from Valcourt to Forde). Forde made several partial payments—thus reducing (by June 2020) the amount he owed to $292,240.56. *See* SMF at 4. Krantz and Forde then agreed on a final lump-sum payment of $220,000—the details of which Forde worked out with Krantz's lawyer, Peter Terracciano. *See* June 10, 2020, Email from Terracciano to Forde (the "Genuine Email") [ECF No. 1-11] at 6 ("Please wire $220,000 as agreed upon with Arthur [Krantz].");[4] Forde Dep. at 38:8–10, 39:3–6, 39:11 (reading—and not denying the contents of—the Genuine Email).

Just ten minutes later, however, Forde received a second email, ostensibly from Terracciano, with updated wiring instructions—this time to an account at Capital One Bank. *See* June 10, 2020, Email from Fraudster to Forde ("Fraudster's Email") [ECF No. 1-11] at 9;[5] Forde Dep. at 41:21–42:5, 43:16–17 (discussing the Fraudster's Email). The fraudster signed off as "Peter," and the email address he listed in the signature block at the bottom of the email was Peter Terracciano's real email address (pterracciano@jtesqs.com). *See generally* Fraudster's Email. But the actual email account from which the message was sent was peter@jtessgs.com. *Ibid.* Forde didn't notice this discrepancy. *See* Forde Dep. at 42:16–17 (Q: "Did you notice that [the fraudster's email address was different from Terracciano's]?" Forde: "No.").

Forde thus wired his $220,000 to the Capital One account the fraudster had told him to use. *See* Forde Dep. at 46:11–15 (Q: "Who created this subsidiary account?" Forde: "I mean, the law firm

---

[4] In its entirety, the Genuine Email reads: "In follow-up to our call, attached is wire info for our firm's escrow account. Please wire $220,000 as agreed upon with Arthur [Krantz]. The funds will be held in escrow until we exchange a bill of sale and lien release for vessel. Please send me a copy of the purchase documents so I can prepare a new bill of sale and lien release. Call me with any questions."

[5] The Fraudster's Email reads: "Steve, here's our firm's subsidiary account we just concluded to use and receiving the funds. Attached is the wire information for our firm's escrow account. Please wire 220,000 as agreed upon with Arthur. The funds will be held in escrow until we exchange bill of sale and lien release for the vessel. Please send me a copy of the purchased documents so I can prepare a new bill of sale and lien release. Call me with any questions. Peter."

5

that Arthur [Krantz] had me send the $220,000 to him. I don't know. But it was on the law firm's—it was on the law firm's letterhead, Joseph, Terracciano, and Lynam."); *id.* at 47:4–6 (Q: "Did you ever get a response from the FBI as to where your money went?" Forde: "No."). Naturally, none of this money made it to Krantz. So, a few days later, Terracciano sent Forde the following email: "Steve, as advised, our firm did not receive the $220,000 wire pursuant to the wire instructions [provided in the Genuine Email]. The bank you wired funds to [sic] Capital One is not our bank and was not the bank listed on our wiring instructions Sterling National Bank." June 17, 2020, Email from Terracciano to Forde [ECF No. 1-11] at 15; Forde Dep. at 47:21–48:7 (reading that email and not denying its contents). When asked at his deposition where the money went, Forde said: "To my knowledge, I don't know." Forde Dep. at 48:16–18.

Initially, Forde and Krantz's lawyers tried to recover the funds. Forde—who "spent a lot of time trying to figure this out"—contacted the FBI, Capital One Bank, and his own bank, but ultimately recovered nothing. *Id.* at 47:4–15, 48:10–18, 49:21–50:3. Terracciano's office "called the local precinct to report the potential side [sic] of the crime and was advised that [Forde] must report the crime loss, since [it] was [Forde's] claim, must be reported in the jurisdiction [where he] reside[d] or [was] conducting business in." *Id.* at 47:16–48:17 (reading the June 17, 2020, email from Terracciano). Terracciano's firm also began including the following warning at the bottom of its email correspondence:

> BECAUSE OF THE INCREASE IN WIRE FRAUD ACTIVITY, <u>DO NOT</u> SEND A WIRE TRANSFER TO OUR FIRM OR TO ANY OTHER PERSON WITHOUT <u>VERBAL RE-CONFIRMATION</u> WITH AN ATTORNEY AT OUR OFFICE OF THE WIRE TRANSFER BANK ACCOUNT INFORMATION.

*See* December 3, 2020, Email from Forde's Attorney Nicholas Zeher to Peter Terraciano [ECF No. 1-11] at 3.

When these initial efforts failed, however, both parties proceeded under the assumption that the erroneous payment was the other side's problem. *See* Forde Dep. at 60:23–61:4 (Forde: "I paid the

6

boat off in full on June 10th[, 2020.]" Q: "But did you pay the boat off on June 10th?" Forde: "Yes." Q: "To who[m]?" Forde: "The way Arthur [Krantz] asked me to send it to[ ] his lawyer."); *id.* at 45:1–4 (Forde: "[Terracciano] said he was told the fraud wasn't against him. Which seems odd that the bank details [in the Fraudster's Email] are on his law firm's letterhead, like, that seems relatively fraudulent.").

> **D. Forde deletes the yacht from Coast Guard documentation, transfers title to a foreign entity he owns, and registers the yacht in the Cayman Islands. Krantz begins his repossession efforts.**

After he sent his $220,000 to the fraudster's account, Forde deleted the yacht from the Coast Guard's documentation system and began the process of transferring title to a foreign entity he owned. *See* Forde Dep. at 60:23–24 (Forde: "I paid the boat off in full on June 10th[, 2020,] and was working on documenting the boat elsewhere."); *id.* at 61:12–20 (Q: "So this – certificate here states 'The records maintained by this office indicates the vessel named above was deleted from documentation on 7/14/2020. Last owner of record: MWE Yachts, LLC, Ltd.' To your knowledge, is this document correct?" Forde: "I don't have any knowledge about documents. I would imagine it is because that's about the time that I paid the boat off and transferred it to where I could own the company."). It appears that Forde documented (or attempted to document) the vessel in the Cayman Islands. *See* Cayman Registry Application [ECF No. 94-3].

Unhappy with Forde's actions, Krantz began his efforts to repossess the vessel. *See* Forde Dep. at 69:10–70:1 ("In November [2020], when I first learned that [Krantz] was trying to repossess the boat, I contacted my attorney, Nick, and told him what was going on. And we decided that we had to file this lawsuit to try and get some relief . . . . [Krantz] left me a voicemail . . . saying he was coming for me, he was coming for my house, he was coming for my boat. . . . [H]is last thing was to MF'ing put me in the ground."). Krantz's efforts have been unsuccessful. *See* MSJ ¶ 15 ("[Forde] further

7

refused to comply with the terms and conditions of the [Mortgage] and [the Promissory Note] by failing to return the vessel to Krantz after default.").

### E. This lawsuit

Frustrated by what he perceived as harassment, Forde sued Krantz on March 26, 2021, seeking the following two declarations under the Federal Maritime Lien Act, 46 U.S.C. §§ 31341–43: (1) that the Mortgage was "improperly recorded" and thus "invalid"; and (2) that he had paid off the "Promissory Note in full." Complaint ¶¶ 82, 91. He also asserted fourteen state-law claims arising from Krantz's efforts to repossess the yacht. Forde then filed an Amended Complaint [ECF No. 9] before Krantz had appeared, but the gist of the sixteen claims was the same.

On May 5, 2021, Krantz answered the Amended Complaint, *see* Answer [ECF No. 13],[6] filed a counterclaim against Forde, submitted a third-party claim against Forde's limited liability company (MWE Yachts), and filed a petition for writ of replevin (together, the "Initial Counterclaim") [ECF No. 15]. In this Initial Counterclaim, Krantz alleged that Forde and MWE Yachts had "breached . . . their agreements with Krantz and Krantz Motor Yachts, LLC, when they refused to pay the amounts owed on the mortgage and promissory note, refused to maintain federal documentation of the vessel . . . , and refused to return the vessel to Krantz and Krantz Motor Yachts, LLC[.]" Initial Counterclaim ¶ 17.

---

[6] Krantz also moved to dismiss the Amended Complaint's state-law claims on the grounds that (1) Florida's consumer-debt statutes were irrelevant to this case (Counts III–XIV), and (2) Forde failed to state any plausible defamation claims (Counts XV–XVI). *See* Motion to Dismiss Amended Complaint [ECF No. 14] at 2 ("Plaintiff is attempting to interject Florida's state statutes related to consumer debt onto a matter . . . which Plaintiff states is controlled by the Federal Maritime Lien Act[.]"); *id.* at 5 (seeking dismissal of Counts XV–XVI because Forde "failed to make a case for libel, slander, or defamation by alleging facts showing Krantz published or spoke false statements about Forde to a third party or that injury was caused to Forde by the publication"). But, because Krantz had already filed his Answer, we denied the motion to dismiss as improper. *See* December 16, 2021, Paperless Order [ECF No. 45].

Forde responded with a Motion to Dismiss the Counterclaim [ECF No. 28], in which he contended that (1) Krantz (and Krantz Motor Yachts) "lacked standing to bring any claim against Forde because they assigned their right to collect the final payment to Joseph, Terraciano [sic], & Lynam, LLP";[7] and that (2) the petition for writ of replevin suffered from several procedural defects. Motion to Dismiss the Counterclaim at 3, 5.[8]

On March 18, 2022, we granted in part and denied in part Forde's Motion to Dismiss the Counterclaim and ordered Krantz to file an amended counterclaim. *See* March 18, 2022, Order [ECF No. 53]. Roughly two weeks later, Krantz (and Krantz Motor Yachts) did just that, asserting—under our admiralty jurisdiction—*in personam* claims for breach of the Mortgage and Promissory Note against Forde and MWE Yachts, respectively. *See* Krantz's Amended Counterclaim [ECF No. 59] at 2, 4, 6.[9]

---

[7] This standing argument failed because Forde couldn't establish—when limited to the four corners of Krantz's Counterclaim—that Krantz had actually assigned his right to the final payment to Joseph, Terracciano, & Lynam, LLP. *See Unger v. Majorca at Via Verde Homeowners Ass'n Inc.*, 2022 WL 4542348, at *4 n.4 (11th Cir. Sept. 29, 2022) ("[A]t the motion to dismiss stage, a court's consideration of a defendant's objections and counterproposals is limited to 'the four corners of the complaint.'" (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002))). Forde hasn't advanced this argument in any of his filings since—nor does the evidence we've reviewed indicate that any such assignment occurred. Having no evidence of an assignment, we have no reason to believe that Krantz lacks standing to assert his counterclaims.

[8] Krantz later moved for summary judgment *on Forde's Amended Complaint. See* Krantz's MSJ on Forde's Amended Complaint [ECF No. 48]. That was a different motion than the one we're resolving here—which is Krantz's MSJ *on his own counterclaims*. In that earlier motion for summary judgment, Krantz advanced the same arguments he'd made before—and would continue to make after—about Forde's alleged breaches of the Mortgage and Promissory Note. *See* Krantz's MSJ on Forde's Amended Complaint at 16–17 (alleging that Forde "did not make all of the payments owed to Krantz under the terms of the [Mortgage] and [Promissory Note]," "did not document the vessel as required, . . . deleted the vessel from documentation, registered it in the Cayman Islands, and moved it to the Dominican Republic where it remains without fulfilling the terms of the [Mortgage] or [Promissory Note]"). Krantz asked us to "enter summary judgment in [his] favor on all counts and to dismiss [Forde's Amended Complaint] in its entirety with prejudice." *Id.* at 17. We denied that motion without prejudice because Krantz's Motion to Dismiss the Amended Complaint was still pending. *See* February 15, 2022, Paperless Order [ECF No. 50]. And Krantz never refiled it.

[9] Krantz brought a third claim against MWE Yachts under Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *See* Amended Counterclaim at 7–8. But he eventually dismissed it. *See* Notice of Dismissal of Count III of Defendant's Amended Counterclaim [ECF No. 72].

9

Forde answered on July 27, 2022, *see* Answer to Amended Counterclaim [ECF No. 73], but his counsel withdrew shortly thereafter.[10] Because Forde wasn't complying with our orders to retain new counsel, we dismissed the case without prejudice. *See* June 5, 2023, Order [ECF No. 90]. The next day, however, Krantz filed a motion to reopen the case, *see* Krantz's Motion to Reopen Case as to Counterclaim [ECF No. 91], which we granted "to the extent that [Krantz and Krantz Motor Yachts] seek leave to move for summary judgment on their counterclaims," *see* June 6, 2023, Paperless Order [ECF No. 92]. On June 16, 2023, Krantz and Krantz Motor Yachts moved for summary judgment [ECF No. 95] on their Amended Counterclaim [ECF No. 59].[11] That's the MSJ we resolve today.

In the MSJ, Krantz argues that Forde "refused to comply with the terms and conditions of the Mortgage and Promissory Note by failing to make all payments required by the terms of the Mortgage, document the vessel with the United States, maintain insurance on the vessel,[12] and return the vessel to Krantz after default." MSJ ¶¶ 14–15 (cleaned up). Krantz (and Krantz Motor Yachts) then asks us to "enter summary judgment in their favor on [Counts I and II of their Amended

---

[10] This was the last substantive filing Forde submitted—probably because, just a short while later, his lawyer withdrew. *See* Plaintiff's Motion to Withdraw as Attorney [ECF No. 79]. We then closed the case and gave Forde 60 days to find a new lawyer. *See* Order Granting Motion to Withdraw [ECF No. 82]. When he didn't find one, we gave him an additional sixty days to get a lawyer. *See* Paperless Order granting *nunc pro tunc* the Motion for Extension of Time to Hire New Counsel [ECF No. 85]. He again failed to find a lawyer and again asked us for an extension of time. *See* Motion for Extension of Time to Hire Counsel [ECF No. 86]. This time, though, we denied his request. *See* Paperless Order Denying the Motion for Extension of Time [ECF No. 88]. We then instructed Forde to file "*either* a notice of appearance by new counsel *or* a renewed motion for extension of time that includes the Defendants' positions on the relief he seeks," and we warned him that, if he "fails to comply with this order, we *will* dismiss his case without prejudice and without further notice." Paperless Order [ECF No. 89]. We never heard from Forde again.
[11] They also submitted their Statement of Material Facts ("SMF").
[12] We won't delve further into this question of insurance because Krantz made no such allegation in his Amended Counterclaim. In any event, Forde says that he *did* have an insurance policy on the vessel. *See* Forde Dep. at 32:2–6 (Q: "Here [Krantz's attorney] says you haven't maintained insurance. Did you have insurance on the boat?" Forde: "Yes." Q: "And who was the insurer?" Forde: "I don't remember off the top of my head."). Without more from Krantz, that would probably be enough for Forde to survive summary judgment on the insurance issue.

Counterclaim] and to award Krantz the sum of $292,240.56 plus interest and attorney's fees, and further to order Forde to return the vessel to Krantz."[13] *Id.* at 7. In support of his MSJ and SMF, Krantz attached three exhibits: Forde's November 8, 2021, Deposition [ECF No. 94-1]; the yacht's Abstract of Title from the Coast Guard [ECF No. 94-2]; and the yacht's registration documents in the Cayman Islands [ECF No. 94-3].

## THE LAW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Ibid.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material

---

[13] One immediate observation: If Krantz prevails on this MSJ, he cannot recover *both* the yacht *and* the $292,240.56 he claims in damages. That would be an impermissible windfall. Instead, he could recover one *or* the other in accordance with paragraph 16 of the Mortgage ("Remedies upon Default").

11

fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with specific facts showing there is a genuine issue for trial." *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3); *see also HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) (noting that a "court may decide a motion for summary judgment without undertaking an independent search of the record" (quoting FED. R. CIV. P. 56 advisory committee's note)). In any event, on summary judgment, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001).

In sum, if there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (Ungaro, J.) ("If the record presents factual issues, the Court must not decide them; it must deny the motion [for summary judgment] and proceed to trial."). On the other hand, the Court must grant summary judgment if the nonmoving party "has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323; *see also Lima v. Fla. Dep't of Child. & Families*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994))).

## ANALYSIS

We have subject-matter jurisdiction over this maritime case. *See* 28 U.S.C. § 1333 ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are

otherwise entitled."); *see also Diesel "Repower," Inc. v. Islander Inv. Ltd.*, 271 F.3d 1318, 1322 (11th Cir. 2001) ("The saving to suitors clause [of 28 U.S.C. § 1333] allows an *in personam* action, whether the action is instituted in a state court or . . . in a federal court under maritime jurisdiction."). And Krantz has shown that, even when the evidence is viewed in the light most favorable to Forde, no reasonable juror would find that Forde complied with his contractual obligations under the Mortgage and Promissory Note.

"The elements of a breach of contract claim under Florida law and admiralty law are the same: 'a plaintiff must prove (1) the terms of a maritime contract; (2) that the contract was breached; and (3) the reasonable value of the purported damages.'" *Am. Marine Tech., Inc. v. M/Y Alchemist*, 526 F. Supp. 3d 1236, 1247 (S.D. Fla. 2021) (Singhal, J.) (quoting *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005)); *see also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) ("For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008))). "To constitute a vital or material breach, a defendant's non-performance must be such as to go to the essence of the contract." *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1313 (11th Cir. 2019) (quoting *Sublime, Inc. v. Boardman's Inc.*, 849 So. 2d 470, 471 (Fla. 4th DCA 2003)). "[T]he party alleged to have breached the contract must have failed to perform a duty that . . . is of such significance that it relieves the injured party from further performance of its contractual duties." *Burlington & Rockenbach, P.A. v. Law Off. of E. Clay Parker*, 160 So. 3d 955, 960 (Fla. 5th DCA 2015) (cleaned up). "A party's failure to perform some minor part of [its] contractual duty cannot be classified as a material or vital breach." *Covelli Family, L.P. v. ABG5, L.L.C.*, 977 So. 2d 749, 752 (Fla. 4th DCA 2008).

A.  **Forde and Krantz entered into a valid contract.**

The parties entered into a valid contract. At its core, the Mortgage conveyed a property interest in the yacht to Forde in exchange for $900,000. *See generally* Mortgage; SMF ¶ 1; Forde Dep. at 15:7–16:21 (discussing the Mortgage); *see also Redington Grand, LLP v. Level 10 Props., LLC*, 22 So. 3d 604, 608 (Fla. 2d DCA 2009) (noting that "[o]bligation pertains to the consideration" and adding that "[m]utual obligation is essential" to a valid contract (quoting *Bacon v. Karr*, 139 So. 2d 166, 169 (Fla. 2d DCA 1962))). Forde and Krantz signed the contract on January 3, 2019. *See* Mortgage at 2; Promissory Note at 9; *see also Suarez Trucking FL Corp. v. Souders*, 350 So. 3d 38, 42 (Fla. 2022) ("Basic contract law has long established that '[i]n order to create a contract, it is essential that there should be a reciprocal assent' to the contract terms." (quoting *Strong & Trowbridge Co. v. H. Baars & Co.*, 54 So. 92, 93 (Fla. 1910))).

Forde (it's true) alleges that the "[Mortgage] was improperly recorded" with the Coast Guard and is thus "invalid." Amended Complaint ¶ 83; *see also* Forde's Answer to the Counterclaim [ECF No. 73] at 4 ("For his Fifth Affirmative Defense, Forde alleges [the Mortgage] and/or Promissory Note is not a valid ships [sic] mortgage because it does not meet the requirements of the Federal Maritime Lien Act, 46 U.S.C. §§ 31341–43."). But we aren't entirely sure why Forde says so. He's certainly produced no evidence for this claim—not in his Complaint, or in his Answer to Krantz's Counterclaim, or even at summary judgment. And a party cannot survive summary judgment without producing *some* evidence to support his position. *See Lucas v. City of Delray Beach*, 2023 WL 6037456, at *10 (S.D. Fla. Sept. 15, 2023) (Altman, J.) (noting that a nonmovant has the "burden of producing *some defense* to a summary judgment motion" (emphasis added)). Even if we were to accept Forde's assertion that the Mortgage was invalid, though, that finding wouldn't excuse him of his obligations under that Mortgage. While a hypothetical third party who'd bought the boat from Forde might have a viable failure-to-record defense as against Krantz, Forde (as the yacht's mortgagor) can advance no such argument. *See* 46 U.S.C. § 31321(a)(1) ("A bill of sale, conveyance, *mortgage*, assignment, or related

14

instrument, whenever made, that includes any part of a documented vessel . . . must be filed with the Secretary to be valid, to the extent the vessel is involved, against any person *except* the grantor, *mortgagor*, or assignor[.]" (emphasis added)). Plus, the law is well-settled that a party cannot repudiate a contract while simultaneously benefitting from its terms. *See Pine Grove Twp. v. Talcott*, 86 U.S. 666, 678–79 (1873) ("It would in the highest degree be inequitable and unjust to permit [a party] to repudiate a contract the fruits of which he retains." (quoting Theodore Sedgwick & John Norton Pomeroy, *A Treatise on the Rules which Govern the Interpretation and Construction of Statutory and Constitutional Law* 73 (1874))). If Forde truly believed that the Mortgage was invalid because it hadn't been properly recorded, he could've returned the yacht to Krantz and demanded reimbursement of his payments. By absconding with the yacht, however, he's forfeited any right to complain about the validity of the Mortgage.

### B. Forde breached the contract by not paying Krantz (or Krantz's lawyers).

Having established that the parties entered into a valid contract, we turn to Krantz's allegations of breach. According to Krantz, Forde breached the Mortgage and Promissory Note when he (1) failed to document the vessel with the Coast Guard and (2) failed to pay off the Mortgage in full. *See* Amended Counterclaim ¶¶ 12, 19.

We begin with documentation. Here, at least, we aren't convinced that Krantz has done enough to prevail on the MSJ. Yes, the Mortgage is clear that Forde had a duty to document the vessel. *See* Mortgage ¶ 3 ("FEDERAL DOCUMENTATION/STATE REGISTRATION: Borrower agrees that the Vessel will be documented as with the United States[.]"). And Forde admits that he *didn't* do that. *See* Forde Dep. at 64:4–8. But Forde testified (under oath) that Krantz *told* him not to document the vessel. *Id.* at 21:15–21 (Q: "So in [the Agreement] that was signed by both you and Arthur [Krantz], do you agree that you agreed to document the vessel with the United States?" Forde: "Yes, when Arthur gave me the go-ahead, yes." Q: "So you're saying that his signature [on the Mortgage and

15

Promissory Note] wasn't the go ahead[?]" Forde: "No, because he asked me not to document it."). Krantz's (alleged) modification of the contract *may* provide Forde with a defense to this aspect of Krantz's counterclaim. *See St. Joe Corp. v. McIver*, 875 So. 2d 375, 382 (Fla. 2004) ("It is well established that the parties to a contract can discharge or modify the contract, however made or evidenced, through a subsequent agreement.") We say "may" because the Mortgage says that "[n]o amendment of this Agreement will be valid unless in writing and signed by both Borrower and Lenders." Mortgage ¶ 23. Plus, Forde admitted that a little over a year after the parties signed the Mortgage, one of Krantz's lawyers (Valcourt) asked Forde for some information about the documentation—a request Forde never complied with. *See* Forde Dep. at 30:7–12 (Q: "Here, Matt [Valcourt], who you say is [Krantz's] attorney, is asking you for information to document the vessel, correct?" Forde: "Yes, 15 months after." Q: "Did you provide that information?" Forde: "No.").

Given the parties' evolving expectations on the issue of documentation, we aren't totally comfortable resolving this question in Krantz's favor. *Cf. Schwartzben v. Nat'l Fire & Marine Ins. Co.*, 2023 WL 3600604, at *3 (S.D. Fla. May 4, 2023) (Martinez, J.) ("If a genuine dispute of material fact exists, the Court must deny summary judgment."); *Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 534 (11th Cir. 2018) ("[G]enuine disputes of facts are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant." (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009))).

But the $220,000 final lump-sum payment is a different story. While Forde claims to have wired the funds to Krantz's lawyers in good faith, he doesn't contest Krantz's allegation that those funds ended up in a fraudster's account. *See* Forde Dep. at 48:16–18 (Q: "So to your knowledge, where is this $220,000?" Forde: "To my knowledge, I don't know."). Indeed, Forde tried to recover the funds by contacting Capital One Bank, his own bank, and the FBI. *See id.* at 47:4–15, 48:10–18, 49:21–50:3. By not paying Krantz or his agents, Forde breached a material term of the Mortgage and Promissory

16

Note. The central question this case presents, then, is to what extent Forde might be absolved of his breach by the fact that he was defrauded. And that question, in turn, hinges on the baseline we should apply to a transaction that's been interrupted by an independent criminal act.

There are precious few cases on this issue, but one decision from the Middle District of Florida is instructive. *See Arrow Truck Sales, Inc. v. Top Quality Truck & Equipment*, 2015 WL 4936272 (M.D. Fla. Aug. 18, 2015) (Moody, J.). In that case, a third-party fraudster hacked the email accounts of both the seller and the buyer of commercial trucks. *Id.* at *3. There, as here, the third-party fraudster sent the buyer an email with "updated wiring instructions." *Ibid.* Like Forde, the buyer "did not question the updated wiring instructions despite the fact that they included markedly different information from the previous wiring instructions. [He] did not focus on where the payment [went] because it was not his business." *Ibid.* As a threshold matter, the court found that neither party was "negligent in the manner that they maintained their email accounts," and that both parties "were the victims of a sophisticated third-party fraudster." *Id.* at *4. But, because the buyer's payment never reached the seller—and since the buyer "was in the best position to prevent the fraud," given that the fraudulent wiring instructions "involved completely different information from all of the previous instructions"—the court held the buyer responsible for the breach. *Id.* at *5–6. "Simply put," the court concluded, "[the buyer] should have exercised reasonable care after receiving conflicting emails containing conflicting wire instructions by calling [the seller] to confirm or verify the correct wire instructions prior to sending the $570,000. As such, [the buyer] should suffer the loss associated with the fraud." *Id.* at *6.

We agree with Judge Moody's reasoning and, on similar facts, come out the same way here. As in *Arrow Truck*, Forde received the Fraudster's Email (containing markedly different wiring instructions) just ten minutes after he received the Genuine Email. And Forde followed these new instructions without noting that the Fraudster's Email had come from an entirely different email

17

account—one not associated with Krantz or his lawyers. *See* Forde Dep. at 42:16–17. (Q: "Did you notice that [the fraudster's email address was different from Terracciano's]?" Forde: "No."). Notably, as in *Arrow Truck*, Forde never asked Krantz or Krantz's lawyers—either by phone or email—about the change in the wiring instructions. *See id.* at 43:3–10 (Q: "Did you ask [Terracciano] why you got a second e-mail changing the instructions for the wire transfer?" Forde: "I don't recall." Q: "Well, it seems like a pretty significant event to get different instructions for a wire transfer. You didn't think this was an issue?" Forde: "At the time, no."). Instead, he replied directly to the fraudster, telling him that "I already requested the wire. Are these details different? Do you need me to stop it and change to these details?" *Id.* at 45:10–18. And—again, as in *Arrow Truck*—there's no evidence that Krantz (or his lawyers) acted negligently.[14] Like Judge Moody, in short, we find that Forde "should suffer the loss associated with the fraud," *Arrow Truck*, 2015 WL 4936272, at *6—and that, as such, he's responsible for breaching a material term of the Mortgage.

***

---

[14] At his deposition, Forde indirectly placed responsibility on Krantz's lawyers by pointing out that the fraudulent wire details were on Krantz's "law firm's letterhead" and that those new instructions "seem[ed] relatively fraudulent." Forde Dep. at 44:24–45:4. Forde's one-time lawyer, Nicholas Zeher, made a similar argument—albeit more directly—when he accused Terracciano's firm of having inadequate "cyber security practices in place," which in turn resulted in "negligence in [the Forde] matter." Zeher's December 3, 2020, Email to Terracciano [ECF No. 1-11] at 3. As evidence of this "negligence," Zeher pointed out that Terracciano's firm added a wire-fraud warning to the bottom of all their emails *after* the fraud was discovered. *See ibid.* ("Recognizing your firm's negligence in this matter, . . . your firm finally chose to implement a cyber security measure regarding wire transfers[.]"). Two problems with this. *One*, as we've said, Forde hasn't opposed Krantz's MSJ with evidence of his own, and it's not our job to scour the record for morsels that might save him. *See Ministerios El Camino v. Scottsdale Ins. Co.*, 587 F. Supp. 3d 1194, 1202 (S.D. Fla. Feb. 24, 2022) (Moore, J.) (noting that, when resolving an unopposed motion for summary judgment, courts need not "*sua sponte* review all of the evidentiary materials on file" to make the non-movant's argument for him, but rather "must ensure that the motion itself is supported by evidentiary materials" (quoting *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004))). *Two*, and in any event, the Federal Rules are clear that, "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . negligence [or] culpable conduct." FED. R. EVID. 407. We thus cannot blame Krantz's lawyers for implementing subsequent remedial measures.

Having established that Forde breached a material term of the Mortgage by not paying the final $220,000 he owed Krantz, we hereby **ORDER AND ADJUDGE** as follows:

1. Krantz's Motion for Summary Judgment [ECF No. 95] is **GRANTED** as to Counts I and II, and Krantz may enforce his "Remedies upon Default," as laid out in paragraph 16 of the Mortgage. We note that the Mortgage doesn't entitle Krantz to *both* repossession of the yacht *and* recovery of the $292,240.56 he's claimed in damages. Instead, he may recover one *or* the other in accordance with paragraph 16 of the Mortgage.

2. Under FED. R. CIV. P. 58, the Court will enter an order of final judgment separately.

3. The Clerk shall **CLOSE** this case.

4. All other pending motions are **DENIED as moot**, all hearings are **CANCELED**, and any deadlines are **TERMINATED**.

**DONE AND ORDERED** in the Southern District of Florida, on October 26, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record