UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 21-cv-80603-RKA/Reinhart

**STEVEN FORDE**, *et al.*,

    *Plaintiffs*,

v.

**ARTHUR KRANTZ**, *et al.*,

    *Defendants*.

_____/

## ORDER

In this action[1] about a yacht sale gone wrong, we have before us the Plaintiff's Amended Rule 60(b) Motion (the "Rule 60(b) Motion") [ECF No. 107]. The Plaintiff (Steven Forde)—the buyer of the yacht—filed this lawsuit back in 2021. Soon after, though, either because he ran out of money to prosecute the case or because he lost interest in it, Forde disappeared. Having warned Forde several times that the case would proceed with or without him, we ultimately granted the Defendant's motion for summary judgment on his (the Defendant's) counterclaim and closed the case.[2]

Our Final Judgment [ECF No. 99] finally caught Forde's attention. Dissatisfied with our ruling, he's now resurfaced, asking us to do three things: (1) to alter our Final Judgment so that it awards Krantz *only* money damages (rather than *either* money damages *or* the boat); (2) to reduce the money judgment from $292,240.56 to $200,000; and (3) to reopen the case so that Forde can subpoena

---

[1] Steven Forde is both our Plaintiff and our Counter-Defendant, and Arthur Krantz is both our Defendant and our Counter-Plaintiff. Forde is involved both as an individual and as MWE Yachts, LLC. Similarly, Krantz appears as an individual and as Krantz Motor Yachts, LLC. For simplicity's sake, we'll refer to the parties as "Forde" and "Krantz," except when the respective LLCs must be discussed.
[2] The Defendant is Arthur Krantz.

a bank in the hopes of proving that Krantz had unclean hands. For the reasons we discuss below, we **DENY** Forde's Amended Rule 60(b) Motion.

FACTUAL AND PROCEDURAL HISTORY[3]

### I. The botched yacht sale

Forde and Krantz consummated a yacht sale on January 3, 2019, when they executed (1) a Mortgage and (2) a Promissory Note—all in accordance with the provisions of 46 U.S.C. §§ 31322 & 31325. According to those documents, Forde and MWE Yachts, LLC, stood as the mortgagors, while Krantz and Krantz Motor Yachts, LLC, were the mortgagees. *See* Mortgage [ECF 59-3] at 2. Under the terms of the Mortgage and the Promissory Note, Krantz conveyed the yacht (called "Arthur's Way") to Forde in exchange for $900,000. *See* Promissory Note [ECF 59-3] at 9. The Mortgage also imposed on Forde the following duty (among others):

> SECURED OBLIGATION: This Agreement secures: (a) all of Borrower's obligations under this agreement; (b) all of Borrower's obligations under that certain Promissory Note in the amount of $900,000.00 and any mortgage or debt instrument or charter party agreement which Borrower executed and which is intended to be secured by this Agreement . . . ; (c) payment of all costs, charges, expenses, and fees related to the Agreement and/or the Instrument . . . ; and (d) the performance of all representations, warranties, and promises as stated in this Agreement or the Instrument.

Mortgage ¶ 1. And, in the case of a default, the Mortgage allowed Krantz, among other things, to:

> (1) require that Borrower immediately pay the full unpaid balance of Borrower Debt; . . . (3) demand that borrower assemble and deliver the Vessel to Lenders at such location as Lenders may reasonably require . . . ; (4) lawfully enter any premises where the Vessel may be located and repossess the Vessel . . . with or without legal process or judicial decree and with or without previous notice or demand for performance; . . . (6) bring suit at law, in equity, or in admiralty to foreclose Lenders' security interest and/or to recover judgment for any and all amounts due . . . ; (8) refer this Agreement to an attorney for collection or enforcement[.]

*Id.* ¶ 16.

---

[3] A more extensive and detailed summary of the facts can be found in our Order Granting Summary Judgment [ECF No. 98], which is available on Westlaw as *Forde v. Krantz*, 2023 WL 7109745 (S.D. Fla. Oct. 27, 2023). We'll focus here only on the facts that are most relevant to Forde's Rule 60(b) Motion.

2

At first, Forde made the $35,000 monthly payments to Krantz, as required by the Promissory note, *see* Promissory Note at 9—though not always on time, *see* March 13, 2020, Email from Matthew Valcourt to Forde [ECF No. 48-6] at 2 ("[T]he loan is now two months in arrears."); Forde Dep. at 31:18–32:1 (reading—and not denying the contents of—that email). By June 2020, Forde owed $292,240.56 on the original $900,000 mortgage. *See* Krantz's Statement of Material Facts ¶ 8. Krantz and Forde then agreed on a final lump-sum payment of $220,000—the details of which Forde worked out with Krantz's lawyer, Peter Terracciano. *See* June 10, 2020, Email from Terracciano to Forde (the "Genuine Email") [ECF No. 1-11] at 6 ("Please wire $220,000 as agreed upon with Arthur.").

This is where things went sideways. Just ten minutes after receiving that email from Terracciano, Forde received a second email, ostensibly from Terracciano, with updated wiring instructions—this time to an account at Capital One Bank. *See* June 10, 2020, Email from Fraudster to Forde ("Fraudster's Email") [ECF No. 1-11] at 9. The fraudster, pretending to be Terracciano, signed off as "Peter," and he listed Peter Terracciano's real email address (pterracciano@jtesqs.com) in the signature block at the bottom of the email. *Ibid.* But the actual email account from which the message was sent was peter@jtessgs.com. *Ibid.* Forde didn't notice this discrepancy. *See* Forde Dep. at 42:16–17. (Q: "Did you notice that [the email address was different from Terracciano's]?" Forde: "No.").

Forde then wired his $220,000 to the Capital One account the fraudster had told him to use. *See* Forde Dep. at 46:11–15 (Q: "Who created this subsidiary account?" Forde: "I mean, the law firm that Arthur had me send the $220,000 to him. I don't know. But it was on the law firm's—it was on the law firm's letterhead, Joseph, Terracciano, and Lynam."). Naturally, none of this money made it to Krantz. So, a few days later, Terracciano sent Forde the following email: "Steve, as advised, our firm did not receive the $220,000 wire pursuant to the wire instructions [provided in the Genuine Email]. The bank you wired funds to Capital One is not our bank and was not the bank listed on our

3

wiring instructions Sterling National Bank." June 17, 2020, Email from Terracciano to Forde [ECF No. 1-11] at 15.

Initially, Forde's and Krantz's lawyers tried to recover the funds. Forde—who "spent a lot of time trying to figure this out"—contacted the FBI, Capital One Bank, and his own bank, but ultimately recovered nothing. Forde Dep. at 47:4–15, 48:10–18, 49:21–50:3. Terracciano's office "called the local precinct to report the potential side[sic] of the crime and was advised that [Forde] must report the crime loss, since [it] was [Forde's] claim, must be reported in the jurisdiction [where he] reside[d] or [was] conducting business in." *Id.* at 47:16–48:17 (Forde reading the June 17, 2020, email from Terracciano). When these initial efforts failed, however, both parties proceeded under the assumption that the erroneous payment was the other side's problem. *See* Forde Dep. at 60:23–61:4 (Forde: "I paid the boat off in full on June 10th[, 2020.]" Q: "But did you pay the boat off on June 10th?" Forde: "Yes." Q: "To who?" Forde: "The way Arthur asked me to send it to[ ] his lawyer."); *id.* at 45:1–4 (Forde: "[Terracciano] said he was told the fraud wasn't against him. Which seems odd that the bank details [in the Fraudster's Email] are on his law firm's letterhead, like, that seems relatively fraudulent.").

After he sent his $220,000 to the fraudster's account, Forde deleted the yacht from the Coast Guard's documentation system and began the process of transferring title to a foreign entity he owned. *See* Forde Dep. at 60:23–24 (Forde: "I paid the boat off in full on June 10th[, 2020,] and was working on documenting the boat elsewhere."); *id.* at 61:12–20 (Q: "So this – certificate here states 'The records maintained by this office indicates [sic] the vessel named above was deleted from documentation on 7/14/2020. Last owner of record: MWE Yachts, LLC, Ltd.' To your knowledge, is this document correct?" Forde: "I don't have any knowledge about documents. I would imagine it is because that's about the time that I paid the boat off and transferred it to where I could own the company."). It appears that Forde registered (or attempted to register) the vessel in the Cayman Islands. *See* Cayman

4

Registry Application [ECF No. 94-3]. Unhappy with all this, Krantz began trying to repossess the vessel. *See* Forde Dep. at 69:10–71:1 ("In November [2020], when I first learned that [Krantz] was trying to repossess the boat, I contacted my attorney, Nick, and told him what was going on. And we decided that we had to file this lawsuit to try and get some relief . . . . [Krantz] left me a voicemail . . . saying he was coming for me, he was coming for my house, he was coming for my boat. . . . [H]is last thing was to MF'ing put me in the ground."). Krantz's efforts have been unsuccessful. *See* MSJ ¶ 15 ("[Forde] further refused to comply with the terms and conditions of the [Mortgage] and [the Promissory Note] by failing to return the vessel to Krantz after default.").

## II. This lawsuit

Frustrated by what he perceived as harassment, Forde sued Krantz on March 26, 2021, seeking the following two declarations under the Federal Maritime Lien Act, 46 U.S.C. §§ 31341–43: (1) that the Mortgage was "improperly recorded" and thus "invalid"; and (2) that he had paid off the "Promissory Note in full." Complaint ¶¶ 82, 91. He also asserted fourteen state-law claims arising from Krantz's efforts to repossess the yacht. Forde later filed an Amended Complaint [ECF No. 9] before Krantz appeared, but the gist of the sixteen claims was the same.

On May 5, 2021, Krantz answered the Amended Complaint, *see* Answer [ECF No. 13], filed a counterclaim against Forde, submitted a third-party claim against Forde's limited liability company (MWE Yachts, LLC), and filed a petition for writ of replevin (together, the "Initial Counterclaim") [ECF No. 15]. In this Initial Counterclaim, Krantz alleged that Forde and MWE Yachts had "breached . . . their agreements with Krantz and Krantz Motor Yachts, LLC, when they refused to pay the amounts owed on the mortgage and promissory note, refused to maintain federal documentation of the vessel . . . , and refused to return the vessel to Krantz and Krantz Motor Yachts, LLC[.]" Initial Counterclaim ¶ 17.

Forde responded with a Motion to Dismiss the Counterclaim [ECF No. 28], in which he contended that (1) Krantz (and Krantz Motor Yachts, LLC) "lacked standing to bring any claim against Forde because they assigned their right to collect the final payment to Joseph, Terraciano [sic], & Lynam, LLP"; and that (2) the petition for writ of replevin suffered from several procedural defects. Motion to Dismiss the Counterclaim at 3, 5.[4]

On March 18, 2022, we granted in part and denied in part Forde's Motion to Dismiss the Counterclaim and ordered Krantz to file an amended counterclaim. *See* March 18, 2022, Order [ECF No. 53]. Roughly two weeks later, Krantz (and Krantz Motor Yachts) did just that, asserting—under our admiralty jurisdiction—*in personam* claims for breach of the Mortgage and Promissory Note against Forde and MWE Yachts, respectively. *See* Krantz's Amended Counterclaim [ECF No. 59] at 2, 4, 6. Forde answered on July 27, 2022, *see* Answer to Amended Counterclaim [ECF No. 73], but his lawyer withdrew from the case shortly thereafter, *see* Plaintiff's Motion to Withdraw as Attorney [ECF No. 79]. We therefore closed the case and gave Forde sixty days to find a new lawyer. *See* Order Granting Motion to Withdraw [ECF No. 82]. When he didn't find one, we gave him an *additional* sixty days. *See* Paperless Order granting *nunc pro tunc* the Motion for Extension of Time to Hire New Counsel [ECF No. 85]. After those 120 days were up—and still unable to find anyone to represent him—Forde asked us for yet another extension of time. *See* Motion for Extension of Time to Hire Counsel [ECF No. 86]. This time, though, we denied his request. *See* Paperless Order Denying the Motion for Extension of Time [ECF No. 88]. We then instructed Forde to file "*either* a notice of appearance by new counsel *or* a renewed motion for extension of time that includes the Defendants' positions on the relief he

---

[4] Krantz later moved for summary judgment *on Forde's Amended Complaint. See* Krantz's MSJ on Forde's Amended Complaint [ECF No. 48]. That was a different motion than the one we ultimately granted— which was Krantz's motion for summary judgment *on his own counterclaim.* We denied that earlier motion without prejudice because Krantz's Motion to Dismiss the Amended Complaint was still pending, *see* February 15, 2022, Paperless Order [ECF No. 50], and Krantz never refiled his request for summary judgment on Forde's amended complaint.

seeks," and we warned him that, if he "fails to comply with this order, we *will* dismiss his case without prejudice and without further notice." Paperless Order [ECF No. 89]. We wouldn't hear from Forde again until *after* we issued our Final Judgment.

Because Forde wasn't complying with our orders to retain new counsel, we dismissed the case without prejudice. *See* June 5, 2023, Order [ECF No. 90]. The next day, however, Krantz filed a motion to reopen the case, *see* Krantz's Motion to Reopen Case as to Counterclaim [ECF No. 91], which we granted "to the extent that [Krantz and Krantz Motor Yachts] seek leave to move for summary judgment on their counterclaims," *see* June 6, 2023, Paperless Order [ECF No. 92]. On June 16, 2023, Krantz and Krantz Motor Yachts moved for summary judgment ("MSJ") [ECF No. 95] on *their* Amended Counterclaim [ECF No. 59].[5]

In the MSJ, Krantz and Krantz Motor Yachts argued that Forde "refused to comply with the terms and conditions of the Mortgage and Promissory Note by failing to make all payments required by the terms of the Mortgage, document the vessel with the United States, maintain insurance on the vessel, and return the vessel to Krantz after default." MSJ ¶¶ 14–15 (cleaned up). Krantz (and Krantz Motor Yachts) thus asked us to "enter summary judgment in their favor on [Counts I and II of their Amended Counterclaim] and to award Krantz the sum of $292,240.56 plus interest and attorney's fees, and further to order Forde to return the vessel to Krantz." *Id.* at 7.

We granted Krantz's MSJ on October 26, 2023. *See* Order Granting Summary Judgment [ECF No. 98]. In that order, we found that Forde had "breached a material term of the Mortgage and Promissory Note" by not paying Krantz (or Krantz's agents) the agreed-upon $220,000. *Id.* at 16–17. We then determined that Forde "should suffer the loss associated with the fraud" because (1) he hadn't "not[ed] that the Fraudster's Email had come from an entirely different email account . . . not

---

[5] They also submitted their Statement of Material Facts ("SMF") [ECF No. 94]).

associated with Krantz or his lawyers"; (2) he "never asked Krantz or Krantz's lawyers—either by phone or email—about the change in the wiring instructions"; and (3) there was "no evidence that Krantz (or his lawyers) acted negligently." *Id.* at 17–18. We therefore held that "Krantz may enforce his 'Remedies upon Default,' as laid out in paragraph 16 of the Mortgage." *Id.* at 19. In saying so, however, "[w]e note[d] that the Mortgage doesn't entitle Krantz to *both* repossession of the yacht *and* recovery of the $292,240.56 he's claimed in damages. Instead, he may recover one *or* the other in accordance with paragraph 16 of the Mortgage." *Ibid.* We then entered Final Judgment, ordering that:

1. Judgment is entered in favor of the Defendants/Counter-Plaintiffs Arthur Krantz and Krantz Motor Yachts, LLC.

2. The Defendants/Counter-Plaintiffs may enforce their rights as articulated in paragraph 16 of the Preferred Ship's Mortgage ("Remedies Upon Default") [ECF No. 1-1] to recover either the motor vessel "Denrae" (formerly known as "Arthur's Way") or the $292,240.56 they've claimed in damages (plus interest). *See* Motion for Summary Judgment [ECF No. 95].

3. The Defendants/Counter-Plaintiffs are also entitled to attorney's fees and costs.

4. We'll retain jurisdiction over the case to enforce this Order.

Final Judgment at 1.

### III.    The post-judgment proceedings

Thirty-one days after we entered final judgment—and 197 days since he last appeared in this case—Forde re-surfaced with his *pro se* Motion to Set Aside Judgment [ECF No. 103]. In it, he (1) attempted to explain his absence by pointing to two motions he'd allegedly filed (which, he said, we didn't acknowledge); (2) asked for "the opportunity to present evidence that [his] previous attorneys collected for over two years . . . [that] will clearly demonstrate [he] paid $220,000 to Mr. Krantz"; and (3) requested that we order him *only* to pay a "financial judgment" since "neither [he] nor [his] entity owns the yacht and have not owned it for 2 years." Motion to Set Aside Judgment at 1–2.

We denied the Motion to Set Aside Judgment without prejudice for two reasons. *See* December 1, 2023, Order [ECF No. 104]. *First*, we noted that, while we *had* received one of the two motions

8

Forde referenced, *see* Motion for Extension to Hire Counsel [ECF No. 88], we—far from ignoring it—had denied it because it didn't comply with Local Rule 7.1, *see* May 17, 2023, Paperless Order [ECF No. 88]. As for the second motion, we told Forde that it "appears nowhere on the docket." *See* December 1, 2023, Order at 1. *Second*, we expressed confusion about the specific Federal Rule of Civil Procedure Forde was proceeding under since he'd failed to identify one in his papers. *See id.* at 2. Recognizing, however, that "Forde has been without a lawyer and *may* have good reasons for having disappeared from this action for several months," we ordered him to file an amended motion "by **December 20, 2023**," in which we directed him to (1) "specifically identify the Federal Rule of Civil Procedure under which he's proceeding"; (2) "cite caselaw that justifies why he's entitled to the relief he's seeking"; and (3) "attach a **sworn affidavit** explaining his absence in this case from May 17, 2023, to November 30, 2023." *Id.* at 3 (emphasis in original).

On January 3, 2024—nearly two weeks after our December 20, 2023, deadline expired—Forde filed the amended Rule 60(b) Motion we adjudicate today. In it, he says that he's proceeding under Rule 60(b), *see* Rule 60(b) Motion ¶ 1, and he makes three requests:

1. That—under Rule 60(b)(1)—we reduce the monetary judgment against him from $292,240.56 to $200,000. *Id.* ¶ 3. He arrives at this sum in two steps. *First*, he alleges that all parties "modified" the contract such that the "final amount owed" was $220,000. *Ibid*. *Second*, he asserts that he sent $20,000 "to [Krantz] when [Krantz] told [him] he needed money in the interim while [Krantz and Forde] tr[ied] and work out what happened to the final $220,000" sent to the fraudster. *Ibid.*

2. That—under Rule 60(b)(2)—we "reopen the case" to allow him to "subpoena the [fraudster's] bank" since "[t]he owner of said account could be related to [Krantz]." *Id.* ¶ 4. "When my lawyers withdrew," Forde says, "I contacted opposing counsel to inform [them] I would subpoena the bank [but] was told discovery had ended." *Ibid.* The information such a subpoena would uncover, Forde says, would be "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." *Ibid.*

3. That—under Rule 60(b)(6)—we "not include the boat in [our Final Judgment] and only include a monetary judgment due against [Forde] personally" because he "sold [the yacht] two years ago." *Id.* ¶ 2.

9

And, trying (haphazardly) to explain his prolonged absence from this case, Forde says only the following: "When I submitted my previous motion, I never received a response. So I was under the impression the courts were reviewing the motion. I was unaware of anything I had to do." Affidavit [ECF No. 107] at 3.

Krantz filed his Response in Opposition to Forde's Rule 60(b) Motion on January 25, 2024, arguing that Forde "has not shown mistake, newly discovered evidence, fraud, or any other reason that justifies [Rule 60(b)] relief," and that "[t]here are no extraordinary circumstances here." Rule 60(b) Response [ECF No. 109] ¶ 5. On Forde's request for a reduced monetary judgment, Krantz has attached a previously filed affidavit, which explains how he came up with the $292,240.56. *See* Krantz Affidavit [ECF No. 109-1]. As to Forde's request that we reopen the case so that he can conduct more discovery, Krantz points out that, "[n]ot once . . . from May 2021 through December 2022, some 19 months while represented by counsel, did [Forde] subpoena the [fraudster's bank]." *Id.* ¶ 10. Finally, about Forde's alleged sale of the yacht to a third party, Krantz notes that "[n]o evidence has been provided of a sale." *Id.* ¶ 16.

## The Law

"Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). "Rule 60(b) 'is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances.'" *Tucker v. Commonwealth Land Title Ins. Co.*, 800 F.2d 1054, 1056 (11th Cir. 1986) (alteration in original) (quoting *Griffin v. Swim Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984)). "[D]isagreement with the Court's ruling is an insufficient basis for reconsideration of a prior order." *Martes v. Sacco*, 2011 WL 13272347, at *1 (S.D. Fla. Apr. 7, 2011) (Dimitrouleas, J.). Rule 60 is "not a vehicle for rehashing arguments the Court has already rejected or for attempting to refute the basis of the Court's earlier decision." *Ibid.* (cleaned up). Rule 60(b) requires

10

the moving party to "demonstrate a justification for relief so compelling that the district court [is] required to grant [the] motion." *Maradiaga v. United States*, 679 F.3d 1286, 1291 (11th Cir. 2012) (cleaned up). "A party may not use Rule 60 as a substitute for a timely and proper appeal." *Parks v. U.S. Life and Credit Corp.*, 677 F.2d 838, 840 (11th Cir. 1982). Because "Rule 60(b) motions are directed to the sound discretion of the district court," the Eleventh Circuit "will set aside the denial of relief from such motion only for abuse of that discretion." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1355 (11th Cir. 2009) (cleaned up).

Rule 60(b) provides six mechanisms for "Relief from a Final Judgment, Order, or Proceeding." Forde relies on three of these:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(6) any other reason that justifies relief.

FED. R. CIV. P. 60(b).

"Rule 60(b)(1) permits courts to reopen judgments for reasons of 'mistake, inadvertence, surprise, or excusable neglect,' but only on motion made within one year of the judgment." *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 393 (1993) (quoting FED. R. CIV. P. 60(b)(1)). It "is designed to permit the district court to reconsider and correct its own errors, particularly if they are of an obvious nature amounting to little more than clerical errors," *Rice v. Ford Motor Co.*, 88 F.3d 914, 918 n.7 (11th Cir. 1996), and it also "covers all mistakes of law made by a judge," *Kemp v. United States*, 596 U.S. 528, 534 (2022).

To prevail under Rule 60(b)(2), a litigant "must satisfy a five-part test: '(1) the evidence must be newly discovered since the final order; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must be not merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that it would probably produce a new

result.'" *Cuffy v. Sec'y, Dep't of Corr.*, 2022 WL 20580427, at *2 (S.D. Fla. May 17, 2022) (Altman, J.) (quoting *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1309 (11th Cir. 2003) (cleaned up)). A Rule 60(b)(2) motion is "an extraordinary motion and the requirements of the rule must be strictly met." *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1316 (11th Cir. 2000).

Finally, Rule 60(b)(6) is "the catch-all ground for relief." *Galbert v. W. Caribbean Airways*, 715 F.3d 1290, 1294 (11th Cir. 2013). It "permits reopening [a case] for any other reason that justifies relief, so long as the motion is filed within a reasonable time." *Kemp*, 596 U.S. at 531–32. "This last option is available only when Rules 60(b)(1) through (b)(5) are inapplicable, [and,] even then, extraordinary circumstances must justify reopening." *Id.* at 533 (cleaned up).

## ANALYSIS

All three of Forde's Rule 60(b) arguments fail. *First*, Forde has failed to show that his agreement to pay off the Mortgage and Promissory Note for $220,000 wasn't conditioned on his *actually paying* that sum—nor has he shown that the agreement persisted (that is, that it didn't expire) in the nearly four years since he failed to pay. *Second*, the evidence Forde hopes to obtain by subpoenaing the fraudster's bank account isn't (if it exists at all) "newly discovered evidence" because Forde could have sought that information *during* discovery. *Third*, our Final Judgment already accounts for the possibility that Forde may no longer be in possession of the yacht by ordering him *either* to hand over the yacht *or* to pay the money judgment. We'll take these points in order.

### I.     Forde hasn't shown that we miscalculated the monetary judgment.

According to Forde, "[t]he deposition of both [Forde] and Mr. Krantz and the emails from his law firm [accept] modified contract terms including a modification of the amount owed[.]" Rule 60(b) Motion ¶ 3. "Due to this agreed and undisputed modification the final amount owed was $220,000, and therefore[ ] the most awarded should be the $220,000 [l]ess the $20,000 that was sent to Mr. Krantz by [Forde] a few months after the final transfer was made. The $20,000 'extra wired

funds' are undisputed and sent by [Forde] to help Mr. Krantz when he told [Forde] he needed money in the interim while we try and work out what happened to the final $220,000 sent to his law firm." *Ibid.*

The first part is easy: The parties agree that they modified the original agreement in a way that would allow Forde to pay off the outstanding mortgage with a single lump-sum payment of $220,000. This modification appeared in the parties' pre-judgment filings. *See* Forde's Amended Complaint ¶ 14 ("Prior to the loan coming to term, Krantz asked Forde if he would be interested in paying off the remainder of the loan. Forde and Krantz agreed on a final payment of $220,000.00[.]"); *see also* Krantz's Answer ¶ 14 (admitting this); Krantz's Amended Counterclaim ¶ 18 ("In June 2020, Forde and MWE Yachts, LLC, offered to pay the sum of $220,000.00 as full and final settlement of all amounts owed on the mortgage and promissory note. Krantz agreed[.]"); Forde's Answer to the Counterclaim ¶ 18 ("Admitted only that $220,000.00 was agreed as full and final satisfaction[.]"). And the parties have reaffirmed this agreement in their post-judgment filings. *See* Rule 60(b) Motion ¶ 3 ("Due to this agreed and undisputed modification the final amount owed should be $220,000[.]"); *see also* Rule 60(b) Response ¶ 22 (Krantz says that he "never received $220,000.00 as agreed by Forde and that agreement failed."); Krantz Affidavit ¶ 9 ("In June 2020, [Forde] offered to pay the sum of $220,000.00 as full and final settlement of all amounts owed on the mortgage and promissory note."). And this all comports with what we've seen of the email correspondence between Forde and Krantz's lawyers. *See* June 10, 2020, Email from Terracciano to Forde (the "Genuine Email") [ECF No. 1-11] at 6 ("Please wire $220,000 as agreed upon with Arthur.").

In resolving Krantz's MSJ, though, our understanding was that this $220,000 agreement expired when Forde failed to pay. That, after all, is what Krantz alleged. *See* Krantz's Amended Counterclaim ¶ 18 (asserting that, because the $220,000 "payment was never received[,] that agreement expired"). While Forde *did* deny this proposition, *see* Forde's Answer to Amended Counterclaim ¶ 18

13

("den[ying]" this allegation), he never adduced *any* support for that denial. Instead, he disappeared. We were thus left to discern for ourselves whether Forde's earlier deposition could be construed as providing some support for this defense. But neither that deposition nor any other piece of evidence suggested that the parties intended for the $220,000 lump sum to supplant the full debt *if* (as happened here) Forde decided *not* to pay right away. Nor would any such agreement have made any sense. Why, after all, would Krantz agree to take *less* money unless he was getting something in return? Under Forde's theory, Krantz simply forgave $79,000 in unpaid mortgage debts for nothing. That seems exceedingly unlikely.[6]

And, since it doesn't appear that Forde gave Krantz any other consideration for the reduced debt, we're not sure that the modification Forde is describing would have been effective. *See Off. Pavilion S. Fla., Inc. v. ASAL Prods., Inc.*, 849 So. 2d 367, 370 (Fla. 4th DCA 2003) ("[A] modification of a contract must be supported with consideration."); *see also Diverse Elements, Inc. v. Ecommerce, Inc.*, 5 F. Supp. 3d 1378, 1381 (S.D. Fla. 2014) (Ungaro, J.) ("Usually, parties must agree to modifications of contracts and support the modification with additional consideration." (cleaned up)); *Charlotte 650, LLC v. Phillip Rucks Citrus Nursery, Inc.*, 320 So. 3d 863, 867 (Fla. 2d DCA 2021) ("A party who alleges a contract modification carries the burden of proving it, and it is well-established that modifications of contracts must be supported by new consideration *as well as* the consent of both parties." (cleaned up and emphasis added)). Forde can thus benefit from the modification *only* if he gave something in

---

[6] Forde also testified that, after he sent the $220,000 to the fraudster, he wired an additional $20,000 to Krantz. *See* Forde Dep. at 72:10–12 ("Arthur called me two, three months [after the payment to the fraudster], upset because he needed money. I sent him another $20,000."). Krantz, for his part, says nothing about this alleged $20,000 payment. *See generally* Rule 60(b) Response; *see also* Krantz Affidavit [ECF 109-1]. If it's true that Forde sent this money to Krantz in partial payment of his debt, then in fairness that sum should (probably) be deducted from the overall computation of Krantz's damages. But the parties never explain whether this money was (or was not) included in the $292,240.56 Krantz has demanded. We'll therefore **DIRECT** the parties, within 14 days of this Order, to confer about the proper amount of Krantz's judgment and to provide us with an accounting of their respective calculations.

return. And what did he give in return for the reduced demand? The promise of immediate payment, of course. Having failed to produce that immediate payment, however, Forde cannot now avail himself of the reduced demand.

Forde, in short, hasn't cleared Rule 60(b)'s high bar. *Cf. Solaroll Shade and Shutter Corp., Inc. v. Bio-Energy Sys., Inc.*, 803 F.2d 130, 1132 (11th Cir. 1986) (noting that, to succeed on a Rule 60(b) motion, a party "must demonstrate a justification so compelling that the court was required to vacate its order"). At the same time, we recognize that Forde is proceeding *pro se* and that his filings should be afforded a "liberal construction[.]" *Taveras v. Bank of Am., N.A.*, 89 F.4th 1279, 1289 (11th Cir. 2024). So, in the interest of getting this judgment right, we'll **DENY without prejudice** this part of Forde's motion and allow him to file an amended motion that proves—with attached documentary evidence—his calculations.

### II.    The fraudster's bank records aren't "newly discovered evidence."

The next part of Forde's motion fails because Forde cannot use Rule 60(b)(2) to conduct discovery he could—and should—have conducted earlier. According to Forde:

> Neither plaintiffs counsel nor defendants counsel subpoena the bank the received the wired funds of $220,000. This is inexcusable to me. The owner of said account could be related to the parties involved. When my lawyers withdrew I contacted opposing counsel to inform I would subpoena the bank to see who was in control of [the fraudster's] account opened in the name of Mr. Krantz law firm that sent the wire instructions I was told discovery had ended. Upon review that was the case. . . . I ask the court to reopen the case under [Rule 60(b)(2)] to allow the information to come to light. What are travesty of justice if one of the parties involved here are or were in control of that account and actually received the funds.

Rule 60(b) Motion ¶ 4 (errors in original).

We agree with Forde that the "owner of [the fraudster's] account *could* be related to the parties involved." Rule 62(b) Motion ¶ 4 (emphasis added). But it was incumbent on *Forde* to investigate that possibility. *See PDVSA US Litig. Tr. v. Lukoil Pan Ams., LLC*, 991 F.3d 1187, 1193 (11th Cir. 2021) ("[I]n our adversarial system, we follow the principle of party presentation. We rely on the parties to

15

frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." (quoting *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (cleaned up))). And, in our adversarial system, Forde is responsible for the decisions of his lawyers. *See Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 864 (11th Cir. 2004) (noting—in the context of a party who "may have been harmed by his counsel's inability to meet deadlines"—that "the Supreme Court has said that clients are to be held accountable for the acts and omissions of their attorneys" (citing *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 396–97 (1993))). In other words, Forde's decision—through his lawyers—*not* to subpoena the fraudster's bank account during the discovery period means, almost by definition, that the evidence he's after isn't "newly discovered" under Rule 60(b)(2). Again, to prevail under Rule 60(b)(2), a party "must show that (1) the evidence is newly discovered since [final judgment]; (2) he exercised due diligence to discover the new evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new [summary judgment adjudication] would probably produce a new result." *Willard v. Fairfield S. Co., Inc.*, 472 F.3d 817, 824 (11th Cir. 2006). Forde plainly fails the first two prongs *both* because the evidence from the third party's bank has always been available *and* because his lawyers' failure to subpoena that evidence establishes a lack of diligence.

On this point, the Eleventh Circuit's decision in *Kissinger-Campbell v. C. Randall Harrell, M.D, P.A.*, 418 F. App'x 797, 805 (11th Cir. 2011), is instructive. The plaintiff there sued her former employers for non-payment of overtime, for retaliation, and for tortious interference. *See id.* at 801. The jury returned a verdict for the plaintiff only on the tortious-interference claim. *See ibid.* The defendants then "filed several motions for judgment as a matter of law, or, alternatively, for a new trial." *Ibid.* In one of these motions, the defendants "contend[ed] that the District Court abused its discretion by not granting a new trial on the basis of newly discovered evidence, under Rule 60(b)(2)." *Id.* at 804. The evidence in question consisted of "depositions of [a] Dr. Zbella and his office manager

16

. . . Sharon DeLuca, which were taken in a subsequent case in Florida state court." *Id.* at 801. Affirming the district court, the Eleventh Circuit noted that "the claim lacks merit because the Defendants did not exercise due diligence." *Id.* at 805. "[T]he failure to locate a witness prior to trial," the court explained, "whom the movant later argues was important to the case, will be treated as a lack of due diligence." *Ibid.* Because the defendants "could easily have deposed Zbella and discovered the identity of Sharon DeLuca"—and because they "offer no convincing argument that they were unable to obtain the testimony in question from Zbella or DeLuca"—the district court properly denied their request to reopen discovery. *Ibid.* "Simply put," the Circuit concluded, the "[d]efendants could have (and potentially should have) procured before or during trial the testimony that they now seek to present. They failed to do so." *Ibid.*

As in *Kissinger-Campbell*, the evidence Forde is looking for isn't newly discovered at all precisely because (if it exists) it's been there all along. Just as the defendants in *Kissinger-Campbell* could have deposed Zbella and DeLuca before trial, Forde could have subpoenaed the fraudster's bank account before summary judgment. We therefore **DENY** Forde's request for relief under Rule 60(b)(2).

### III.   Our Final Judgment assumed that Forde might sell the yacht.

Finally, Forde asks us "not to include the boat in the order and only include a monetary judgment due against [him] personally [because] the boat in question was sold 2 years ago[.]" Rule 60(b) Motion ¶ 2. In support, he cites a North Carolina appellate-court case, *Curran v. Barefoot*, 645 S.E. 2d 187, in which the defendant agreed "to convey [a] lake house to plaintiffs . . . as well as all watercraft," among other things. *Curran*, 645 S.E. 2d at 189. But that case is very different. When the defendant there "refused to tender," the plaintiffs sued, "seeking specific performance of the contract." *Ibid.* The trial court held that the "plaintiffs are entitled to specific performance of their contract with defendant for conveyance of the . . . associated personal property . . . including watercraft." *Id.* at 190. The defendant "moved for relief from the trial court's . . . judgment" under

17

North Carolina's Rule 60(b) analogue. In that motion, the defendant explained that he *couldn't* comply with the trial court's judgment because he "does not own the three watercraft ordered to be transferred to plaintiffs." *Ibid.* The trial court denied the motion, and the appellate court reversed, finding that "extraordinary circumstances exist and justice demands the judgment be modified" because "[s]pecific performance will not be decreed against a defendant who is unable to comply with the contract even though the inability to perform is cause by the defendant's own act." *Id.* at 195 (cleaned up).

Our case is very different. In *Curran*, the North Carolina trial court ordered the defendant to do something he could not do—*viz.*, convey the watercraft he no longer owned. Here, by contrast, we ordered Forde to do *one of two things*, only one of which he cannot do. Specifically, we ordered that Krantz (and his LLC) "may enforce their rights as articulated in paragraph 16 of the Preferred Ship's Mortgage ('Remedies Upon Default') [ECF No. 1-1] to recover *either* the motor vessel 'Denrae' . . . *or* the $292,240.56 they've claimed in damages (plus interest)." Final Judgment at 1 (emphasis added). So, even if we were to take Forde at his word that he no longer owns the yacht, he can still comply with our order by paying Krantz the monetary portion of the judgment.[7] We therefore **DENY** Forde's request for relief under Rule 60(b)(6).

\* \* \*

One last thing: Forde was the party who filed this lawsuit. And he prosecuted it with vigor for some time. But then, for reasons still unknown to us, his lawyers left him, and he disappeared from the case. We made every effort to accommodate him. We even closed the case for a time, stayed all our deadlines, and gave him several opportunities to find new counsel (or, if he preferred, to proceed

---

[7] We say "take Forde at his word" because, as Krantz notes, Forde hasn't provided any "evidence" of the yacht sale. *See* Rule 60(b) Response ¶ 15. To be fair, though, we haven't ordered Forde to produce any such evidence. *See* December 1, 2023, Order. And we don't need him to. As Krantz rightly observes, Forde "either has possession of the vessel which he can turn over to Krantz to satisfy the judgment, *or* the funds earned from the sale which are owed to Krantz." Rule 60(b) Response ¶ 19 (emphasis added).

18

*pro se*). He ignored all our entreaties and left us with a counterclaiming defendant whose motion for summary judgment was, for some time, pending. It was only *after* we adjudicated that motion—and ruled against him—that Forde suddenly reappeared, seeking post-judgment relief and asking us to reopen the case. But that's not how federal court works. A party cannot litigate only when it's convenient for him—disappearing for months on end only to reemerge when the winds have turned. If we allowed parties to ignore our deadlines, to sit idly by while the case is adjudicated, and then (*after* final judgment) to move to reopen the case, we would severely hamstring our "unquestionable authority" to manage our own docket. *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014). If Forde (on these facts) got his way, in other words, there would be nothing federal judges could do to prevent parties from ignoring court orders with impunity—content in the knowledge that, weeks or even months after final judgment, they could simply move, without prejudice, to resurrect their long-abandoned cases. This we cannot allow, "for there must be an end to litigation some day, and free, calculated and deliberate choices are not to be relieved from." *Parks*, 677 F.2d at 841 (quoting *Ackermann v. United States*, 340 U.S. 193, 198 (1950)).

### Conclusion

We therefore **ORDER AND ADJUDGE** as follows:

1. Forde's Rule 60(b) Motion [ECF No. 107] is **DENIED**.

2. By **April 18, 2024**, Forde may file an amended motion—*but only as to the proper amount of the Final Judgment*. Before he files that amended motion, Forde must confer with Krantz's lawyers in an effort to find some agreement on the amount of the outstanding obligation. If no such agreement can be reached, Forde must explain, with evidence, *precisely* how he's arrived at his calculations. In his response, Krantz must do the same.

3. If Forde files an amended motion, Krantz will have **two weeks** to respond.

4. This case shall remain **CLOSED**.

**DONE AND ORDERED** in the Southern District of Florida on March 18, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Steven Forde, *pro se*
 counsel of record